In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3434

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERMAN ALVARENGA-SILVA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 423-1—**Charles P. Kocoras**, *Chief Judge.*

ARGUED MARCH 4, 2003—DECIDED APRIL 3, 2003

Before BAUER, EVANS, and WILLIAMS, *Circuit Judges.*

PER CURIAM.   This appeal asks us to decide whether
a prior conviction for domestic battery qualifies as a "crime
of violence" under recently amended U.S.S.G. § 2L1.2,
which applies to illegal reentrants. Although the Sentenc-
ing Commission's explanation for its amendment sug-
gests an intention to narrow the definition of crimes of
violence to exclude offenses like domestic battery, the
plain language of the definition compels us to conclude
that domestic battery is a crime of violence under § 2L1.2.
Accordingly, we affirm the district court's sentencing of
the defendant, German Alvarenga-Silva.

Alvarenga is a citizen of El Salvador with no legal status
in the United States. After being deported in 2000, he made

his way back to the United States illegally. It did not take long for federal agents to find Alvarenga, and after being apprehended, he pleaded guilty to being present in the country illegally, 8 U.S.C. § 1326(a). The illegal reentry statute substantially increases the authorized maximum penalty if the alien's prior deportation followed an aggravated felony conviction, *see id.* § 1326(b)(2), and U.S.S.G. § 2L1.2 implements the higher statutory penalty by providing for increases in offense level that turn on the nature of prior convictions. The November 2001 version of § 2L1.2 applied to Alvarenga's sentencing. *See* U.S.S.G. § 1B1.11(a). Section 2L1.2 provides, in relevant part, that courts sentencing illegal reentrants must "[a]pply the [g]reatest" of the following increases to the base offense level of 8:

> If the defendant previously was deported . . . after—
>
> (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by **16** levels;
>
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels;
>
> (C) a conviction for an aggravated felony, increase by **8** levels;
>
> (D) a conviction for any other felony, increase by **4** levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels.

U.S.S.G. § 2L1.2(b)(1). Application Note 1(B)(ii) for § 2L1.2 defines "crime of violence" to include crimes that involve physical force, as well as certain enumerated offenses:

> "Crime of Violence"—
>
> (I)  means an offense under federal, state, or local law that has as an element the use, attempted

use, or threatened use of physical force against the person of another; and

(II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 2L1.2, comment. (n.1).

The district court imposed a 16-level increase in Alvarenga's offense level based on its conclusion that his prior Illinois felony conviction for domestic battery, 720 ILCS 5/12-3.2, qualified as a "crime of violence" under § 2L1.2(b)(1)(A)(ii). Alvarenga had argued that the court should impose only an 8-level increase (for aggravated felonies) because domestic battery is not among the offenses enumerated in § 2L1.2's definition of crimes of violence, but the court rejected this argument. Specifically, the court concluded that Alvarenga's domestic battery conviction qualified as a crime of violence because the enumerated list was "simply illustrative and not exclusive," domestic battery fit the general definition of a violent crime, and the facts underlying the conviction demonstrated that his offense was violent. The district court ultimately sentenced Alvarenga to 96 months' imprisonment and two years' supervised release.

The district court's interpretation of § 2L1.2 is a legal conclusion subject to *de novo* review. *See United States v. Smith*, 308 F.3d 726, 743 (7th Cir. 2002). Alvarenga does not dispute that domestic battery meets the first subsection of § 2L1.2's definition of "crime of violence" because the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 2L1.2, comment. (n.1(B)(ii)(I)). Rather, the only question that Alvarenga raises on appeal is whether a prior offense can qualify as a crime of

violence under § 2L1.2 if it is not among those enumerated in the second subsection of the definition. He asserts that § 2L1.2's definition requires an offense to meet the description in both subsections to qualify as a crime of violence because the word "and," as opposed to "or," links the two subsections. He argues further that his position is strengthened by the purpose underlying the 2001 amendment of § 2L1.2—a reduction of instances where a defendant previously convicted of a less-serious felony, like assault, receives the same increase as a defendant previously convicted of one of the more-serious (and enumerated) felonies, such as murder. The government responds that Alvarenga has ignored the word "includes" in the second subsection and that this term is illustrative, rather than exclusive. Furthermore, the government argues, if only enumerated offenses qualify as crimes of violence, the Sentencing Commission would not have needed to define crimes of violence generally in the first subsection. The government asserts that the two subsections are therefore disjunctive.

"When interpreting a provision of the sentencing guidelines, a court must begin with the text of the provision and the plain meaning of the words in the text." *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). The plain language of § 2L1.2's definition of crimes of violence supports the government's position that the definition is not a two-part test. Alvarenga places much emphasis on the definition's use of "and" to link the two subsections and contrasts this with the "or" wording in the definition of crimes of violence that § 2L1.2 incorporated by reference (located in U.S.S.G. § 4B1.2) before the amendment. But "and" is not followed by "is" in § 2L1.2's new definition. Rather, it is followed by "includes," which signals illustration rather than exhaustion. *See* U.S.S.G. § 1B1.1, comment. (n.2); *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) ("The word 'includes' does not suggest

limitation. In fact, the word is defined 'comprises as a part of the whole.'"). The Sentencing Commission likely enumerated certain serious offenses (like sexual abuse of a minor and burglary of a dwelling), rather than resting on a general definition, to ensure that those particular offenses would be treated as crimes of violence regardless of variations in state statutory elements. *See United States v. Rayo-Valdez*, 302 F.3d 314, 317, 318-19 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 694 (2002). Furthermore, construing "and" as setting up a two-part test would not make sense because it would render the general definition in the first subsection of § 2L1.2's definition unnecessary. *Cf. United States v. Fuentes-Rivera*, ___ F.3d ___, 2003 WL 721756, at *2 (11th Cir. March 4, 2003); *Rayo-Valdez*, 302 F.3d at 318; *United States v. Gomez-Hernandez*, 300 F.3d 974, 979 (8th Cir. 2002), *cert. denied*, 123 S.Ct. 929, 123 S.Ct. 931 (2003). Courts should avoid statutory constructions that render another part of the same provision superfluous. *TRW Inc. v. Andrews*, 524 U.S. 19, 31 (2001).

The Commission's explanation for amending § 2L1.2 provides better support for Alvarenga's argument. *See* U.S.S.G., App. C Supp., amend. 632. The old § 2L1.2 provided:

> If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):
>
> (A)  If the conviction was for an aggravated felony, increase by **16** levels.
>
> (B)  If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by **4** levels.

U.S.S.G. § 2L1.2(b)(1) (2001). But the Commission amended § 2L1.2 in 2001 "to isolate the most serious aggravated felony convictions." *United States v. Rodriguez-Arreola*, 313 F.3d 1064, 1066 (8th Cir. 2002). In the Commission's words, the amendment

> responds to concerns raised by a number of judges, probation officers, and defense attorneys . . . that § 2L1.2 . . . sometimes results in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony. The disproportionate penalties result because the breadth of the definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), which is incorporated into the guideline by reference, means that a defendant who previously was convicted of murder, for example, receives the same 16-level enhancement as a defendant previously convicted of simple assault. . . . This amendment responds to these concerns by providing a more graduated sentencing enhancement of between 8 levels and 16 levels, depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant.

U.S.S.G., App. C Supp., amend. 632.

Specifically, the murder-assault example provides the best support for Alvarenga's argument. The Commission explains that the amendment aims to treat murder and simple assault differently by imposing more graduated increases. *Id*. But simple assault still qualifies for the 16-level increase if the subsections of the definition are read as disjunctive, because assault "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 2L1.2, comment. (n.1(B)(ii)(I)). In fact, we have difficulty imagining an aggravated felony that would *not* qualify as a crime of violence under the first subsection. This is especially so

because amended § 2L1.2 adopts a definition of "aggravated felony" that includes any "offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," thus mimicking the first subsection of § 2L1.2's definition of crimes of violence. *See* U.S.S.G. § 2L1.2, comment. (n.2); 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(a). Thus, if § 2L1.2's definition of crimes of violence is to conform with the Commission's apparent motivation for the amendment and not render § 2L1.2(b)(1)(C) (increasing offense level by 8 for aggravated felonies) superfluous, the enumerated list in the second subsection of the definition could be interpreted as more than just a list of examples.

But in this case, we cannot rely on interpretations of the Commission's intent because the language of the definition, as drafted, leaves no ambiguity. *See United States v. Lovaas*, 241 F.3d 900, 903 (7th Cir. 2001); *United States v. Berrio*, 77 F.3d 206, 209 (7th Cir. 1996). And based on the plain language, we conclude that § 2L1.2 does not set up a two-part test—an offense need not be enumerated in the second subsection of the definition to qualify as a crime of violence. Needless to say, very often offenses will fall under both subsections. But to qualify as a crime of violence under § 2L1.2, it is enough that an offense *either* falls under the general definition in the first subsection *or* is included among the enumerated offenses in the second subsection. Although the Eleventh Circuit, in facing a challenge identical to Alvarenga's, initially concluded that the language of amended § 2L1.2 was ambiguous, *United States v. Hernandez-Gonzalez*, 318 F.3d 1299, 1302 (11th Cir. 2003) (declining to decide the issue because conducting only plain error review), that court's recent decision in *Fuentes-Rivera*, 2003 WL 721756, at *2, comports with our reading of § 2L1.2. And if our reading is indeed at odds with the Commission's apparent intent in amending § 2L1.2 to provide more graduated

increases for different types of offenses, it must be left to the Commission to clarify or redraft § 2L1.2 to achieve the desired result.

Our conclusion is buttressed by the decisions of our sister circuits that have addressed the issue. Responding to challenges that prior convictions should not have been construed as crimes of violence under § 2L1.2 because they did not meet the general definition in the first subsection, the Fifth, Eighth, and Eleventh Circuits all have held that a prior offense does not have to fall within both subsections to qualify as a crime of violence under amended § 2L1.2. *Fuentes-Rivera*, 2003 WL 721756, at \*2; *United States v. Vargas-Duran*, 319 F.3d 194, 195 (5th Cir. 2003); *Rayo-Valdez,* 302 F.3d at 316-19; *Gomez-Hernandez*, 300 F.3d at 978-79. The Fifth Circuit noted in dicta that "the § 2L1.2 definition has eliminated the possibility that a non-enumerated crime risking the use of physical force could qualify as a 'crime of violence,'" *Rayo-Valdez*, 302 F.3d at 318, but that comment is belied by the *Rayo-Valdez* court's conclusion that the Commission enumerated offenses in the second subsection just to make sure that those listed did not escape the purview of the general definition, *id.* at 317. And although these cases do not address the precise challenge that Alvarenga lodges—that a prior offense must be among those enumerated in the second subsection to qualify as a crime of violence—we find them persuasive because all of the circuits rested their conclusion, at least in part, on the plain language of amended § 2L1.2's definition of crimes of violence.

Accordingly, the district court did not err in construing Alvarenga's prior conviction for domestic battery as a crime of violence under § 2L1.2, and the judgment is

AFFIRMED.

No. 02-3434                                                                 9

A true Copy:

    Teste:


                             _____
                            *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*